839 So.2d 1022 (2003)
SAFEWAY INSURANCE COMPANY OF LOUISIANA, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
No. 36,853-CA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2003.
*1023 Alan T. Seabaugh, Shreveport, for Appellant.
Tracy L. Oakley, Ruston, for Appellee.
Before WILLIAMS, PEATROSS and KOSTELKA (Pro Tempore), JJ.
KOSTELKA, Judge Pro Tempore.
State Farm Mutual Automobile Insurance Company ("State Farm") appeals a judgment by the Shreveport City Court against it in the amount of $1,394.99 and in favor of Safeway Insurance Company of Louisiana ("Safeway"). For the following reasons, we affirm.

FACTS
On November 2, 2000, Jopawnna Baines ("Baines") borrowed, with permission, the vehicle of her friend, Jackie Holloway ("Holloway") while Baines' vehicle was being repaired. Holloway's vehicle was insured by an insurance policy issued by Safeway (the "Safeway policy"). Baines' vehicle was insured by a policy of insurance issued by State Farm (the "State Farm policy").
As Baines was operating Holloway's vehicle in Shreveport, Louisiana, the vehicle came in contact with a child, Tori Ladd, who was walking along the street upon which Baines was traveling. As a result of the accident, the child was injured and received medical treatment for which medical expenses were incurred. Safeway (Holloway's insurer) paid Ladd's parents, $1,394.99 in full and final settlement of any and all claims for the injuries and expenses incurred on behalf of their child as a result of the accident.
Subsequently, Safeway filed its Petition of Subrogation against State Farm, asserting that the State Farm policy which covered Baines' vehicle, provided primary liability coverage for the accident. Safeway further claimed that it was subrogated for *1024 the amount of $1,394.99 it paid in settlement. Prior to trial, State Farm filed a Peremptory Exception of No Cause of Action based on La. R.S. 22:655, Louisiana's Direct Action Statute. It also filed a Motion for Summary Judgment. State Farm's exception and motion were reserved for argument at trial of the matter.
After issuing its written Opinion, which included its findings and reasons for judgment, the trial court rendered Judgment in favor of Safeway and against State Farm in the amount of $1,394.99. This appeal by State Farm ensued.

DISCUSSION
The minimal monetary amount at issue in this appeal truly belies the interesting and complex issues of law before us. On appeal, State Farm argues various assignments of error. Whereas there are no facts in dispute, State Farm claims that the trial court made various errors of law. Appellate review of questions of law is to determine if the trial court was legally correct or incorrect. McDonald v. City of Bastrop, 31,238 (La.App.2d Cir.10/28/98), 720 So.2d 1256.
La. R.S. 22:1406(F)
At the heart of this litigation is the issue of which insurer, Safeway or State Farm, provided primary insurance coverage for Baines' fault in striking the Ladd child. Safeway looks to La. R.S. 22:1406(F) addressing temporary substitute vehicles[1] and argues that pursuant to the statute, State Farm provided primary liability coverage. State Farm maintains that pursuant to its policy terms, it would be an excess insurer for temporary substitute vehicles, and that Safeway and the trial court erroneously interpret the statute.
Louisiana R.S. 22:1406(F) states as follows:
Every approved insurance company, reciprocal or exchange, writing automobile liability, physical damage, or collision insurance, shall extend to temporary substitute motor vehicles as defined in the applicable insurance policy and rental private passenger automobiles any and all such insurance coverage in effect in the original policy or policies. Where an insured has coverage on multiple vehicles, at least one of which has comprehensive and collision insurance coverage, that comprehensive and collision substitute coverage shall apply to the temporary substitute motor vehicle or rental motor vehicle. Such insurance shall be primary. However, if other automobile insurance coverage is purchased by the insured for the temporary substitute or rental motor vehicle, that coverage shall become primary. The coverage purchased by the insured shall not be considered a collateral source. (Emphasis added).
A plain reading of the statute does not clearly indicate whether the Legislature intended for liability insurance as well as comprehensive and collision insurance to be primary for temporary substitute motor vehicles (as Safeway argues), or that "such insurance" referred to in the statute as being primary only applied to comprehensive and collision coverage (as State Farm argues); thus, we must examine the statute to determine the true intent of the Legislature.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law must be applied as written. La. C.C. art. 9; La. R.S. 1:3, 1:4. Roberts v. State Farm Mut. *1025 Auto. Ins. Co., 27,501 (La.App.2d Cir.11/01/95), 662 So.2d 821. However, when the language of a statute is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10; Thomas v. Insurance Corp. of Amer., 93-1856 (La.02/28/94), 633 So.2d 136. An ambiguous statute must be construed in a manner to impart the meaning intended by the Legislature and to avoid absurd results. Lopez v. City of Shreveport, 449 So.2d 1184 (La.App. 2d Cir.1984), writ denied, 452 So.2d 175 (1984). To aid in interpreting an ambiguous statute, the court may look to legislative history to discern the intent of the Legislature. State, Dept. of Social Services v. Parker, 595 So.2d 815 (La.App. 2d Cir.1992).
Louisiana R.S. 22:1406(F) was amended to its present form in the 1997 regular session of the Louisiana Legislature. At issue in this case is the sentence emphasized herein, which was added by the 1997 amendment along with the two sentences which follow it. A review of the legislative history from the 1997 House Legislative Services digest states that the "proposed law [i.e., La. R.S. 22:1406(F) presented as HB No. 687 and enacted as Act 951] retains present law and provides that the insured's policy of insurance shall be primary." Emphasis added. The stated purpose indicates no distinction between liability insurance and comprehensive/collision insurance coverage for temporary substitute vehicles. Thus, it appears from the stated legislative history that the Legislature intended for all of the insured's insurance to be primary on temporary substitute vehicles. So considering, pursuant to La. R.S. 22:1406(F), State Farm's liability insurance of Baines would be the primary coverage of the temporary substitute vehicle driven by Baines.[2]
We note that an adherence to the State Farm policy language about excess coverage regarding temporary substitute vehicles would produce a different result. However, policy language must yield to conflicting statutory law. Roberts, supra, citing, Graham v. American Cas. Co. of Reading, Pa., 261 La. 85, 259 So.2d 22 (1972); Malone & Johnson, 15 La. Civil Law Treatise (Insurance Law & Practice), § 4.
Safeway's Subrogation Claim
Concluding that State Farm was primarily obligated to the Ladds despite Safeway's payment to them, we must next ascertain whether Safeway had a valid claim against State Farm for the amount of the payment made to the Ladds.
Subrogation is the substitution of one person or entity to the rights of another. La. C.C. art. 1825. As stated by the Louisiana Supreme Court in A. Copeland Enterprises, Inc. v. Slidell Memorial Hosp., 94-2011 (La.06/30/95), 657 So.2d 1292, "[S]ubrogation is the legal fiction established by law whereby an obligation, extinguished with regard to the original creditor by payment which he has received *1026 from a third person, or from the original debtor but with funds that a third person has provided, is regarded as substituting in favor of this third person who in essence steps into the shoes of the original debtor and is entitled to assert, in the measure of what he has paid, the rights and actions of the former creditor." Subrogation may be either conventional or legal. La. C.C. art. 1825. It may result from either the agreement of the obligor or the obligee or both with a third person (i.e., conventional subrogation), or directly from the operation of law (i.e., legal subrogation). Thus, the intention of subrogation is to protect such persons who perform certain acts. A. Copeland Enterprises, Inc., supra.
When subrogated to the rights of the insured, the insurer stands in the shoes of the insured and thereby acquires the independent right to assert the actions and rights of the insured. Barreca v. Cobb, 95-1651 (La.02/28/96), 668 So.2d 1129; La. C.C. arts. 1825 and 1826; Bailsco Blades & Casting, Inc. v. Fireman's Fund Ins. Co., 31,876 (La.App.2d Cir.05/05/99), 737 So.2d 164.
In its Petition of Subrogation, Safeway alleged to be subrogated to the rights of Holloway, its insured, as a result of its payment of settlement proceeds to the Ladds. Clearly, its policy provides such. It did not claim any other rights of subrogation as to Baines or the Ladds. After a hearing on State Farm's exception of no cause of action, the trial court ruled in favor of Safeway, noting that Safeway could be potentially subrogated to (1) "its insured's rights against State Farm for not paying the claim" or (2) the Ladds. We determine that Safeway properly made a subrogation claim; however, it was neither subrogated to the rights of Holloway, as claimed, or the Ladds, as the trial court determined. Instead, we determine that Safeway is subrogated to the rights of Baines, for the following reasons.
Although not specifically claimed by Safeway, it clearly would be subrogated to the rights of Baines in the case sub judice. Baines operated Holloway's vehicle with permission, which, under the clear terms of the Safeway policy, made Baines its insured.[3] State Farm concedes that Baines was also Safeway's insured under the Safeway policy. The Safeway policy further provides "[I]n the event of any payment under this policy, [Safeway] shall be subrogated to all the insured's rights of recovery therefor against any person or organization...."[4] Thus, Safeway had the right to assert any claim of Baines arising from the collision with the Ladd child-another fact conceded by State Farm.
However, State Farm argues in brief that Safeway could not assert subrogation rights as to Baines, because she had no rights or claims against State Farm as a result of her collision in Holloway's vehicle, as she suffered no damages to her person or property. However, State Farm overlooks the rights Baines has against it arising from the contractual relationship between her and State Farm vis-à-vis the State Farm policy issued to Baines. Obviously, she had a right to assert a claim against State Farm in the event it failed to provide coverage as stated in the policy. See, La. C.C. art.1994.[5] So considering, *1027 Safeway, as subrogee of Baines, and under La. R.S. 22:1406(F), clearly has a subrogation claim against State Farm in this proceeding.
Moreover, we are not constrained by the fact that Safeway failed to specifically claim that it was subrogated to the rights of Baines in this case. The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. La. C.C.P. art. 2164. The purpose of this article is to give the appellate court complete freedom to do justice on the record regardless of whether a particular legal point or theory was made, argued, or decided by the court below. Id., Comment (a); see also, Rachal v. Rachal, 35,074 (La.App.2d Cir.10/12/01), 795 So.2d 1286. Considering the record before us, including the policy of insurance issued by Safeway and La. R.S. 22:1406(F) making State Farm primary insurer, it is clear that Safeway was subrogated to the rights of Baines against State Farm. It is only fair and equitable that Safeway be able to recoup the monies paid to the Ladds, which, under the statute, were primarily owed by State Farm.
Direct Action Statute
Finally, State Farm argues that the trial court erred in allowing a cause of action by Safeway directly against State Farm. It argues that pursuant to La. R.S. 22:655 (the "Direct Action Statute"), there is no provision therein that would allow Safeway to proceed directly against State Farm. However, as determined by the Louisiana Supreme Court in Cacamo v. Liberty Mut. Fire Ins. Co., XXXX-XXXX (La.06/30/00), 764 So.2d 41, 43:
The Direct Action Statute is designed to grant a procedural right of action against an insurer where the plaintiff has a substantive cause of action against the insured. It was enacted to give special rights to tort victims, not to insureds with contract claims against a defendant. In this case, plaintiffs do not purport to file their claims under the Direct Action Statute and have no need to do so.... (Citations omitted).
Here, as discussed, Safeway's claim against State Farm is as subrogee of Baineswhose own rights against State Farm derive from the terms of the State Farm policy of insurance. Just as the Cacamo plaintiffs, any right of action Baines had against State Farm was in contract, giving her and Safeway, as subrogee, the right to make claims directly against State Farm. So considering, State Farm's reliance on the Direct Action Statute is misplaced, and the trial court was not in error finding that the Direct Action Statute was inapplicable in this particular proceeding.

CONCLUSION
For the foregoing reasons, we conclude that the trial court did not err in granting judgment in favor of Safeway Insurance Company of Louisiana and against State Farm Mutual Automobile Insurance Company. The costs of this appeal are assessed to State Farm.
AFFIRMED.
NOTES
[1] The Stipulation of Facts by the parties indicates that Holloway's vehicle driven by Baines would meet the broad definition of a temporary substitute vehicle under both policies. This point is undisputed by Safeway and State Farm.
[2] Although this determination is made based on the jurisprudence regarding the interpretation of ambiguous statutes and a subsequent review of the legislative history regarding this statute, we question whether the statute was intended to extend to such a situation involving two individuals and the temporary loan of a vehicle where the driver's vehicle was inoperative. Under both policies, the definition of a temporary substitute vehicle is broad enough to encompass the vehicle driven by Baines. However, the sentence in the statute which allows the insured to purchase "other automobile insurance coverage" for the temporary substitute vehicle, which then becomes the primary insurance, suggests that the temporary substitute vehicle is one procured from a commercial establishment in the business of offering such a service. We are compelled nonetheless to interpret the statute pursuant to its legislative history and conclude that State Farm is primary insurer.
[3] The Safeway policy defines "Persons Insured" as "(1) the named insured" or "(2) any other person using such automobile to whom the name insured has given permission, provided the use is within the scope of such permission."
[4] Notably, the right of subrogation is not limited to the "named insured."
[5] Also, La. R.S. 22:1220(A) imposes a duty of good faith and fair dealing in performance of the insurance contract. See also, La. C.C. art.1983; Williams v. Louisiana Indem. Co., 26,887 (La.App.2d Cir.06/21/95), 658 So.2d 739, 742. Breach of this particular duty by the insurer renders it liable for any damages, foreseeable or not, that are a direct consequence of its failure to perform. La. C.C. art.1997; La. R.S. 22:1220(A). No allegations of bad faith were made against State Farm by Safeway; however, the statute is illustrative to show that Baines potentially had rights against State Farm.