934 So.2d 745 (2006)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
US AGENCIES, L.L.C.
US Agencies Casualty Insurance Company
v.
State Farm Mutual Automobile Insurance Company.
No. 2005 CA 0728, 2005 CA 0729.
Court of Appeal of Louisiana, First Circuit.
March 24, 2006.
Writ Denied June 16, 2006.
*746 Darrell J. Loup, Baton Rouge, Counsel for Plaintiff/Appellee, State Farm Mutual Automobile Insurance Company.
Donald R. Smith, Baton Rouge, Counsel for Defendant/Appellant, U.S. Agencies Casualty Insurance Company.
Before: CARTER, C.J., DOWNING and GAIDRY, JJ.
CARTER, C.J.
This appeal involves opposing claims by two insurers, State Farm Mutual Automobile Insurance Company (State Farm) and U.S. Agencies Casualty Insurance Company (U.S. Agencies), pertaining to the ranking of their respective insurance policies. The trial court rendered summary judgment, finding the U.S. Agencies policies provided primary coverage. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL HISTORY
The underlying facts in these consolidated cases are undisputed. Both cases find their geneses in accidents wherein drivers, insured by U.S. Agencies, negligently caused collisions while they were temporarily driving vehicles borrowed from State Farm insureds, because their own vehicles were being repaired.[1]
*747 State Farm contends that, pursuant to LSA-R.S. 22:681, the U.S. Agencies policies must provide primary coverage for these incidents. Specifically, that statute requires the extension of an individual's insurance coverage to his use of a "temporary substitute vehicle" and mandates that such coverage be primary. Conversely, U.S. Agencies argues that LSA-R.S. 22:681 only requires the extension of coverage to "temporary substitute vehicles as defined in the applicable insurance policy." Since its policies at issue herein do not define the term "temporary substitute vehicle," U.S. Agencies claims that LSA-R.S. 22:681 is not applicable. According to U.S. Agencies, any such vehicles are treated under its policies as "non-owned autos," and in accordance with its policies, coverage for such non-owned vehicles is to excess, not primary.
The parties subsequently filed cross motions for summary judgment in support of their respective contentions. Concluding that the U.S. Agencies policies provided primary coverage, the trial court denied U.S. Agencies' motion for summary judgment and granted summary judgment in favor of State Farm. This appeal by U.S. Agencies followed.

DISCUSSION
As previously stated, the operative facts herein are undisputed. The sole issue before this court is whether LSA-R.S. 22:681[2] mandates that the U.S. Agencies policies provide primary coverage. The interpretation of a statute is a question of law that may be decided by summary judgment. Appellate courts review summary judgments de novo, under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Levy v. Vincent, 01-0277 (La.App. 3 Cir. 7/18/01), 796 So.2d 34, 36. A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966 B.
The statute at issue, LSA-R.S. 22:681, provides in pertinent part:
Every approved insurance company. . . shall extend to temporary substitute motor vehicles as defined in the applicable insurance policy and rental private passenger automobiles any and all such insurance coverage in effect in the original policy or policies. . . . Such insurance shall be primary.
Legislation is the solemn expression of the legislative will; therefore, the interpretation of a statute primarily involves the search for the legislature's intent. LSA-C.C. art. 2; Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners, 04-1674 (La.2/4/05), 894 So.2d 325, 330. The interpretation of a statute begins with the language of the statute itself. Denham Springs, 894 So.2d at 330. Louisiana Civil Code article 9 instructs that when a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written. LSA-C.C. art. 9; Denham Springs, 894 So.2d at 330.
However, when the language of a statute is susceptible of different meanings, it *748 must be interpreted as having the meaning that best conforms to the purpose of the law. Safeway Insurance Co. of Louisiana v. State Farm Mutual Automobile Insurance Co., 36,853 (La.App. 2 Cir. 3/5/03), 839 So.2d 1022, 1025. When a statute is ambiguous or when its literal construction produces an absurd or unreasonable result, the letter must give way to the spirit of the law and the statute construed to produce a reasonable result. Fontenot v. Chevron U.S.A. Inc., 95-1425 (La.7/2/96), 676 So.2d 557, 562.
US Agencies contends that LSA-R.S. 22:681 is controlling if, and only if, an insurer chooses to use and define the term "temporary substitute vehicle." If an insurer chooses to not define the term, U.S. Agencies maintains the statute does not apply. Until March 2002, U.S. Agencies' policies defined the term "temporary substitute vehicle." However, revisions to its policies deleted such a definition. US Agencies contends its decision to delete the definition exempts it from the provisions of LSA-R.S. 22:681. We disagree.
The provisions of LSA-R.S. 22:681 are clearly mandatory. See LSA-R.S. 1:3. To assume the mandatory language of LSA-R.S. 22:681 is applicable only if an insurance policy chooses to define the term "temporary substitute vehicle," leads to an absurd result. Such a literal interpretation renders LSA-R.S. 22:681 permissive rather than mandatory. We find it incredulous that the legislature would make a provision mandatory and, at the same time, allow insurers to avoid its application by simply refusing to include a definition in their policies. A statute should not be construed so as to produce an absurd result. Rather, a statute must be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La.6/29/01), 808 So.2d 294, 302.
To aid in interpreting an ambiguous statute, courts may look to legislative history to discern the legislature's intent. Safeway, 839 So.2d at 1025. Commentary at legislative committee meetings and journals of the houses of the state legislature are helpful to courts in determining the purpose and true legislative intent behind a law. A court may take judicial notice of these records and journals, where preserved, as they are a matter of public record. Louisiana Public Facilities Authority v. All Taxpayers, 03-2738 (La.App. 1 Cir. 12/23/03), 868 So.2d 124, 131, writ denied, 04-0213 (La.3/11/04), 869 So.2d 801.
We have consulted the minutes and audio-recording of the House Commerce Committee meeting, as well as the minutes of the Senate Commerce Committee meeting, wherein the proposed legislation was debated. It is clear that the legislative intent behind LSA-R.S. 22:681 was to require the extension of all insurance coverage an individual possesses on his own vehicle to the use of a rental vehicle or a temporary substitute vehicle.
The minutes and the audio-recording of the House Commerce Committee meeting held on June 7, 1989, reflect that Representative Stelly presented House Bill No. 1042 (subsequently enacted as 1989 La. Acts No. 438) to provide for the extension of an individual's insurance coverage to his use of a temporary substitute vehicle. Committee chairman, Representative Ensminger, questioned whether the language "temporary substitute vehicle" should be replaced with the term "rental vehicles" because it was the extension of coverage to "rental vehicles" that Representative Stelly was attempting to address. However, this suggested substitution was rejected, and all committee members ultimately approved *749 an amendment to add the term "rental vehicles" after "temporary substitute vehicles." Thus, the proposed legislation would require the extension of coverage to both "rental vehicles" and non-rented "temporary substitute vehicles."
Based on our examination of the aforementioned legislative sources, we conclude that it was not the intention of the legislature to allow an insurer to merely opt out of the mandates of LSA-R.S. 22:681 by not including the definition of "temporary substitute vehicles" in its policies. US Agencies has complied with the mandates of LSA-R.S. 22:681 by subsuming the definition of "temporary substitute vehicle" within its definition of "non-owned auto." Any policy provision providing that such coverage by U.S. Agencies is excess and not primary clearly conflicts with LSA-R.S. 22:681. It is well settled that policy language must yield to conflicting statutory law. Safeway, 839 So.2d at 1025. Hence, we find the trial court's determination that the U.S. Agencies' policies provide primary coverage in these consolidated cases to be legally correct.

DECREE
For the foregoing reasons, the judgment appealed from is affirmed. Appellant, U.S. Agencies Casualty Insurance Company, is cast with all costs of this appeal.
AFFIRMED.
DOWNING, J., concurs and assigns reasons.
DOWNING, J., concurring.
I agree with the majority opinion. I concur to emphasize that this case is significant and will have a major impact as it changes the long-standing practice in the insurance industry. Under La. R.S. 22:681, in an accident where a driver of a temporary substitute vehicle is at fault, the primary liability insurance of the vehicle owner is now secondary.
NOTES
[1] The first suit involved a motor vehicle accident between Aaron Stevens and John Finch. Mr. Stevens, a U.S. Agencies insured, was alleged to be solely at fault in causing the accident. At the time of the accident, Mr. Stevens was operating a vehicle owned by Allison Riley, with her permission, because his vehicle was temporarily out of service while repairs were being made. State Farm insured Allison Riley. Following its payment of Mr. Finch's claim, State Farm filed suit against U.S. Agencies seeking repayment, arguing that pursuant to LSA-R.S. 22:681 the U.S. Agencies policy was required to provide primary coverage for the incident.

Several months later, U.S. Agencies filed a separate suit seeking a judgment declaring that its policy did not provide primary coverage for a factually similar accident. Again, U.S. Agencies and State Farm disputed the applicability of LSA-R.S. 22:681. The two cases were subsequently consolidated because they turned on a common issue of law.
[2] This provision originally was enacted as LSA-R.S. 22:1406 F by 1989 La. Acts No. 438, § 1, then amended by 1997 La. Acts No. 951, § 1. Without amendment, it was redesignated as LSA-R.S. 22:681 by 2003 La. Acts No. 456, § 3.